**NOT FOR PUBLICATION**

UNITED STATES BANKRUPTCY COURT
DISTRICT OF NEW JERSEY

- - - - - - - - - - - - - - - - - - - - - - - - - -X

In re: JAMES DANIEL & LISA MARIE WRIGHT

                                         Chapter 13
                                         Case No.  09-21247  (RTL)

                      Debtor.
- - - - - - - - - - - - - - - - - - - - - - - - - -X

**OPINION**

**APPEARANCES:**

William H. Oliver, Jr., Esq.
Attorney for James Daniel & Lisa Marie Wright, Debtors

Hennessy & Walker Group, P.C.
Robert W. Allen, Esq.
Attorneys for Clarendon National Insurance Company, Creditor


**RAYMOND T. LYONS, U.S.B.J.**

**INTRODUCTION**

      The Debtor seeks sanctions against the lawyer for a judgment creditor for not initiating

action to have the Debtor's driving privileges restored.  The court finds that Motor Vehicle

Services controls the licensing process, not the judgment creditor.  Section 525 of the

Bankruptcy Code prohibits the state from refusing to renew a debtor's license on account of a

dischargeable debt.  The judgment creditor has no duty to take any action to restore the Debtor's

driving privileges; the Bankruptcy Code puts that responsibility on the state.  The creditor's

lawyer has not violated the automatic stay, therefore, the motion for sanctions is denied.

**JURISDICTION**

This court has jurisdiction of this contested matter under 28 U.S.C. § 1334(a) and (b), 28

U.S.C. § 157(a) and the Standing Order of Reference by the United States District Court for the

District of New Jersey dated July 23, 1984, referring all proceedings related to cases under Title

11 of the United States Code to the bankruptcy court.  This is a core proceeding that may be

heard and determined by a bankruptcy judge under 28 U.S.C. §157(b)(1) and (b)(2)(G) relating

to the automatic stay.

**FINDINGS OF FACT**

The Debtors filed a voluntary petition under chapter 13 of the Bankruptcy Code on May

1, 2009.  Among the creditors scheduled by the Debtors is the State of New Jersey MVC

("Motor Vehicle Services").  After filing bankruptcy, Mr. Wright, the debtor at issue in this

motion ("Debtor"), applied to Motor Vehicle Services to renew his driver's license.  His

application was denied because there was an outstanding judgment against him for damages he

caused to another vehicle.

In 1998 the Debtor was involved in a motor vehicle accident that resulted in damage to

another vehicle.  Clarendon National Insurance Company ("Plaintiff") insured the other vehicle,

paid to repair the damage, and sued the Debtor in the Superior Court of New Jersey.  A default

judgment was entered against him on October 23, 2001 in the amount of $4,307.71.  The

judgment remained unpaid for more than sixty days.  Thereafter, on December 28, 2001 Robert

W. Allen, Esq., attorney for Plaintiff, wrote to the Clerk of the Superior Court requesting that the

Clerk notify the New Jersey Director of Motor Vehicle Services that a judgment remained

unpaid in accordance with the Motor Vehicle Security-Responsibility Law.  N.J. STAT. ANN.

2

39:6-35 (West 2010).  That statute requires the suspension of driving privileges for a defendant

who fails to satisfy a judgment for damages related to operation of a motor vehicle.  *Id.*  Motor

Vehicle Services suspended the Debtor's driving privileges on June 19, 2002.

   The record does not reflect that anything further happened with regard to the judgment or

the Debtor's driver's license until the Debtor applied for renewal after filing bankruptcy on May

9, 2009.  In fact, Robert W. Allen, Esq., attorney for the judgment creditor, certifies that no

further action was taken after his letter of December 28, 2001.  The Debtor has provided no

information regarding the status of his driving privileges between the suspension date of June 19,

2002 and his bankruptcy on May 1, 2009.  However, as noted above, Motor Vehicle Services

was scheduled as a creditor by the Debtor and received notice of the bankruptcy case by the

Clerk of this court.

   When Motor Vehicle Services denied the renewal of the Debtor's license for failure to

satisfy the judgment, it informed him of the contact information for the Plaintiff's attorneys.

The debtor contacted the law firm and was advised by a paralegal that the Plaintiff would agree

to request an order of the Superior Court authorizing Motor Vehicle Services to restore his

driving privilege provided he pay $500 up front and agree to a payment schedule for the balance

due on the judgment.  On August 7, 2009 the paralegal sent a letter and a form of Consent Order

to the Debtor.  He signed and returned the Consent Order with a money order for $500 dated

August 12, 2009.

   Apparently the Debtor first informed his bankruptcy lawyer about the trouble in renewing

his driver's license after he had returned the Consent Order and money order to Plaintiff's law

firm.  On August 18, 2009 the Debtor's bankruptcy lawyer wrote to Plaintiff's lawyers advising

of the bankruptcy filing and the automatic stay effective May 1, 2009.  This was the first written

3

notice of the bankruptcy received by Plaintiff or its lawyers since neither had been scheduled by

the Debtor in his bankruptcy filings.  The letter demanded,

> [Y]ou must immediately return to [the Debtors] the $500.00 that was
> paid to you on August 12, 2009 and restore [the Debtor's] drivers
> license.  If this is not done and continue [sic] to pursue this matter,
> you are in violation of the "automatic stay" and will [sic] have no
> alternative but to file a Motion seeking an Order of Contempt, plus
> attorney's fees, costs and sanctions.

On August 20, 2009, immediately upon receipt of the letter from the Debtor's bankruptcy

attorney, Plaintiff's attorney wrote back by email requesting any legal authority requiring the

return of the $500 and indicating he would hold the money in escrow in the meantime.

Unfortunately, this email was sent to the wrong address and never received.

On August 18, 2009 the Debtor filed an amendment to his schedules listing Plaintiff and

its attorneys on his Schedule F.  Notice was sent to them on August 24, 2009.  Believing,

incorrectly, that his letter had been ignored, the Debtor's bankruptcy lawyer filed a motion with

this court on September 23, 2009 seeking sanctions for violation of the automatic stay.  Again,

immediately thereafter, on September 25, 2009, Plaintiff's lawyer responded; this time by letter

enclosing a copy of his email dated August 20, 2009.  Debtor's lawyer wrote back noting the

incorrect email address.  Four days later on September 29, 2009, Plaintiff's lawyer wrote another

letter to Debtor's lawyer.  He apologized for the error in the address of his email and professed a

willingness to cooperate and honor the automatic stay.  He offered to return the Debtor's $500

and invited contact by every conceivable means.

The Debtor's attorney ignored Plaintiff's lawyer.  Numerous phone calls to the Debtor's

attorney went unreturned.  The Debtor's attorney exhibited a lack of professional courtesy and

unnecessarily prolonged the motion proceedings that could have easily been resolved in a brief

telephone conversation.  Even though this court entered an order directing Motor Vehicle

Services to restore the Debtor's driving privileges, the Debtor's attorney refused to withdraw the

motion seeking sanctions against Plaintiff's lawyer for an alleged violation of the automatic stay.

## DISCUSSION

The automatic stay protects debtors from "any act to collect, assess, or recover a claim

against the debtor that arose before the commencement of the case."  11 U.S.C. § 362(a)(6)

(2009).  State statutes, such as the New Jersey Motor Vehicle Security-Responsibility Law, that

suspend a debtor's driving privileges have been construed as an attempt to collect a debt, and not

an exercise of a state's police power.  *See, e.g., Perez v. Campbell*, 402 U.S. 637, 644-47 (1971).

Therefore, once notified of a debtor's bankruptcy filing, the motor vehicle agency must reinstate

the debtor's license.

New Jersey's Motor Vehicle Security-Responsibility Law authorizes the New Jersey

Director of Motor Vehicle Services to suspend a judgment debtor's license in the event a

judgment arising out of an automobile accident remains unpaid for sixty days.  N.J. STAT. ANN.

39:6-35.  "A discharge in bankruptcy shall relieve the judgment debtor from any of the

requirements of this act, provided that the underlying judgment was not based on a willful or

malicious tort."  *Id.*  The Debtor here has filed for bankruptcy protection under chapter 13 and

thus will not receive a discharge until completion of a confirmed plan.  11 U.S.C. § 1328(a)

(2009).

However, a debtor in chapter 13 is also protected by Section 525 of the Bankruptcy Code

which prohibits a governmental unit from discriminating against debtors in bankruptcy -

> [A] governmental unit may not deny, revoke, suspend, or <u>refuse to
> renew a license</u>, permit, charter, franchise, or other similar grant to,
> condition such grant to, discriminate with respect to such a grant

5

> against . . . a person that is or has been a debtor under this title . . .
> solely because such . . . debtor is or has been a debtor under this title
> . . . , has been insolvent before the commencement of the case under
> this title, or during the case but before the debtor is granted or denied
> a discharge, or has not paid a debt that is dischargeable in the case
> under this title . . . .

11 U.S.C. § 525(a) (emphasis added); *see also In re Brown*, 244 B.R. 62, 67 (Bankr. D.N.J.

2000) ("[W]here, as here, a Chapter 13 debtor is paying an otherwise dischargeable debt through

a Chapter 13 plan, section 525 of the Bankruptcy Code prohibits a municipal court from refusing

to renew the debtor's license, and authorizes the bankruptcy court to direct the municipal court

to rescind its suspension of the debtor's driving privileges.") .

Section 525 was enacted to codify *Perez v. Campbell*, 402 U.S. 637 (1971), which

rendered an Arizona statute unconstitutional as a violation of the Supremacy Clause.  H.R. Rep.

No. 95-595 (1978).  In *Perez*, the statute at issue required a judgment debtor, whose driver's

license had been suspended, to pay off the judgment that resulted in the suspension before the

license could be reinstated.  402 U.S. at 641-42.  The statue specifically provided that a

"'discharge in bankruptcy following the rendering of any such judgment shall not relieve the

judgment debtor from any of the requirements of this article.'" *Id.* at 642 (quoting ARIZ. REV.

STAT. ANN. § 28-1163(B) (1956)).  The Supreme Court held that the Arizona statute violated the

Supremacy Clause because it frustrated the purpose of the Bankruptcy Act, which is to provide

the debtor with a fresh start.  *Id.* at 648-52.  Congress recognized that such practices "are

seriously detrimental to a debtor's fresh start, and are contrary to bankruptcy policy."  H.R. Rep.

No. 95-595 (1978).

*Smith v. Pennsylvania Department of Transportation*, 66 B.R. 244 (E.D. Pa. 1986),

involved a chapter 13 debtor whose license was suspended post-petition by the Pennsylvania

Department of Transportation ("PennDOT") for failure to pay a traffic fine incurred pre-petition. The court held that because the pre-petition debt is dischargeable and the actor is a governmental unit, Section 525's anti-discrimination rule applies. 66 B.R. at 246 (citing *Johnson v. Edinboro State College*, 728 F.2d 163, 165 (3d Cir. 1984)). The court refused to accept PennDOT's assertion that the debtor's bankruptcy was not the sole reason for the license suspension. *Id.* PennDOT's actions were per se discriminatory because they require a debtor to either pay a fine that was listed in his bankruptcy schedules and was dischargeable, or require him to appear in court and contest a ticket that he does not actually contest. *Id.*

Similar to the case at hand, *In re Duke*, 167 B.R. 324 (Bankr. D.R.I. 1994), involved a debtor whose driving privileges had been suspended pre-petition pursuant to a comparable Rhode Island statute. In declining to impose sanctions upon the Rhode Island Department of Transportation, the court surmised that a proper procedure would reinstate a debtor's driver's license immediately upon receiving notice of the bankruptcy filing. *Id.* at 326. Requiring proof of financial responsibility does not violate Section 525 as long as it is required of all similarly situated drivers and not just those in bankruptcy. *Id.*

Section 525 applies only to governmental units and "permits further development to prohibit actions by governmental or quasi-governmental organizations that perform licensing functions." 1 Alan N. Resnick & Henry J. Sommer, COLLIER PAMPHLET EDITION 2010, p.481 (Matthew Bender). However, it "is not so broad as a comparable section proposed by the Bankruptcy Commission, H.R. 31, 94th Cong., 1st Sess. § 4-508 (1975), which would have extended the prohibition to any discrimination, even by private parties." *Id.*

The court hereby concludes that while Section 525 prohibits Motor Vehicle Services from refusing to reinstate a chapter 13 debtor's driver's license after notice of the bankruptcy,

there is no authority to support the Debtor's argument that Plaintiff's lawyers had a duty to

contact Motor Vehicle Services or the state court and initiate proceedings to reinstate the

Debtor's license.  Furthermore, a review of the evidence leads this court to conclude that once

Plaintiff's lawyers became aware of the Debtor's bankruptcy, Robert W. Allen, Esq., attempted

to return the check his firm accepted from the Debtor and work out a solution to the Debtor's

license suspension.  Furthermore, the discourteous conduct by the Debtor's attorney in refusing

all communication from Plaintiff's attorney, and not acknowledging the apology for the

misdirected email, has unnecessarily protracted these proceedings.  Therefore, no violation of the

automatic stay occurred.  On October 28, 2009 this court entered an order directing Motor

Vehicle Services to reinstate the Debtor's driver's license; however, the Debtor's motion for

damages, costs and fees resulting from a violation of the automatic stay is denied.

<u>**CONCLUSION**</u>

Section 525 of the Bankruptcy Code prohibits Motor Vehicle Services from refusing to

reinstate a chapter 13 debtor's driver's license even though the underlying debtor is not yet

discharged, as long as it is a dischargeable debt.  Nothing in the Bankruptcy Code places the

affirmative duty of initiating the debtor's license reinstatement proceedings on the judgment

creditor whose judgment underlies the suspension.  The burden is on the debtor and the duty to

reinstate the debtor's license lies with the state.  A judgment creditor does not violate the

automatic stay nor Section 525 by taking no action to reinstate a debtor's driver's license.  No

other violations of the automatic stay occurred and the Debtor's motion for sanctions is denied.

**Dated: March 9, 2010**                    **/S/Raymond T. Lyons**
                                      United States Bankruptcy Judge

8